IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 96-31113
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKEY JEROME ROGERS,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Middle District of Louisiana
_____
October 17, 1997

Before POLITZ, Chief Judge, BENAVIDES and PARKER, Circuit Judges.

BENAVIDES, Circuit Judge:

Rickey Jerome Rogers appeals his conviction and his sentence for two robberies in violation of 18 U.S.C. § 2113(a). Rogers raises three points of error. He argues that: 1) an in-court identification was admitted in violation of his due process rights; 2) the evidence introduced at trial was insufficient to support his conviction on the first count; and 3) his sentence was based on an erroneous classification of him as a career offender. For the reasons set forth below, we affirm the conviction and remand for re-sentencing.

**Background**

On August 8, 1995, Premier Bank in Baton Rouge, Louisiana, was robbed. Testimony at trial showed that a black man wearing a baseball cap, sunglasses and a blue and burgundy jacket entered the bank and handed a teller a note which said: "This is a robbery  I have a gun If you draw any attention - you shall no doubt die first  Give me prepacked $100 bills you have 10 Seconds." When the teller hesitated, the robber said to her: "Hurry up, hurry up, you bitch.  Hurry up, you old bitch.

I'll blow your brains out." The teller gave the robber two packages of hundred-dollar bills, totaling $10,000.

On October 3, 1995, Regions Bank in Baton Rouge was robbed by a black man wearing a baseball cap, wraparound sunglasses, a yellow hooded raincoat, and tennis shoes. He approached a teller with a note which read: "I got a gun If you draw any attention I'll shoot you first Move fast give me prepacked hundred-dollar bills!! I don't have nothing to lose. nothing." The teller opened her drawer and began taking out packages of large bills. The robber told her to go faster and threatened to shoot her, saying that he had "nothing to lose." The robber left with $3,290 in cash.

A grand jury indicted Rickey Jerome Rogers for these two robberies. A jury found him guilty on both counts of violating 18 U.S.C. § 2113(a), and the district court for the Middle District of Louisiana sentenced him to 21 years and 3 months imprisonment. Rogers filed timely appeal of his conviction and his sentence.

**I. In-Court Identification**

Rogers first asserts that the district court erred in permitting the Government to recall as a witness Deborah Rodrigue, the teller at Regions Bank who was approached by the robber on October 3, 1995. When first called to the witness stand, Rodrigue testified that a black man wearing a hooded raincoat, a baseball cap, and large wraparound sunglasses approached her counter and handed her the demand note; she was not asked to identify the person who had robbed the bank. Following cross-examination, the Assistant U.S. Attorney advised the district court that he "could see something odd about Ms. Rodrigue" during her testimony, that he had asked the F.B.I. case agent to approach her afterward, and that Rodrigue had told the agent she recognized the defendant as the robber. The Government requested, and was given, permission--over an objection by Rogers' attorney--to recall Rodrigue to the stand. She then testified that she was "a hundred percent sure" that Rogers was the man who had robbed Regions Bank.

Rogers argues that Rodrigue's in-court identification was impermissibly suggestive because the identification occurred only after she had seen him in court where he was seated by his lawyer,

the only black man at the defense table. The Government argues that the identification procedure was not unduly suggestive, and contends that Rogers did not raise this objection at trial and that, therefore, this court's review of the question is limited to plain error. Ordinarily the district court's admission of evidence is reviewed for abuse of discretion. United States v. McConnell, 988 F.2d 530, 533 (5th Cir. 1993). When a defendant fails to object in a timely manner, however, we generally review only for plain error. United States v. Krout, 66 F.3d 1420, 1434 (5th Cir. 1995), cert. denied, 116 S.Ct. 963 (1996). Plain error is "error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." United States v. Lopez, 923 F.2d 47, 50 (5th Cir. 1991). In this case, Rogers did not clearly raise the claim of impermissible suggestion.[1] Nevertheless, when liberally construed, his objection could be taken to have generally challenged the reliability of Rodrigue's identification. This court has suggested that increased scrutiny will be given in plain error review when a constitutional right is at stake, and when an objection was raised on a related ground. Id.; United States v. Brown, 555 F.2d 407, 420 (5th Cir. 1977). Given the

---

[1] The relevant portion of the sidebar exchange was as follows:

Prosecutor: "I ask permission to recall Deborah Rodrigue. I think it's relevant information."

Defense Counsel: "Judge, we object to ---"

Prosecutor: "May I finish? I think it is permissible for that witness to talk about her own perception. The defense is welcome to cross-examine her. This is something, as you can tell from my opening, that I didn't expect."

Defense Counsel: "I would object to the case agent sitting in the courtroom, listening to the testimony, going out and talking it over, and coming back now with some other stuff."

Court: "Well, that's the reason you sequester the witnesses, and the case agent certainly ought not to ---"

Prosecutor: "My understanding was, I asked the agent to go do it because I could see something odd about Ms. Rodrigue. The reason we sequester witnesses is so they will not be influenced by the testimony in the courtroom. She hasn't violated any rule."

Court: "Well, I'm not ruling on it one way or the other. I think we'll mull on this for today. We're not going to finish today anyway, so you bring her back tomorrow."

importance of the due process questions raised here regarding in-court identifications, we will give Rogers the benefit of the doubt with respect to the objection, and will consider his claim with increased scrutiny.

The Due Process Clause protects accused individuals from the use against them of evidence derived from unreliable identifications that resulted from impermissibly suggestive procedures. Manson v. Brathwaite, 432 U.S. 98 (1977); United States v. Sanchez, 988 F.2d 1384, 1389 5th Cir. 1993). The admissibility of identification evidence is governed by a two-step test under which we ask first whether the identification procedure was impermissibly suggestive and, second, whether the procedure posed a "very substantial likelihood of irreparable misidentification." Sanchez, 988 F.2d at 1389 (quoting Simmons v. United States, 390 U.S. 377, 384). If the answer to both questions is yes, the identification is not admissible. "The gravamen of the determination is fairness and reliability." Sanchez, 988 F.2d at 1389.

With respect to the first prong of the test, we agree with the Second Circuit that it is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant. United States v. Archibald, 734 F.2d 938, 941, 943 (2d Cir. 1984); see also United States v. Hill, 967 F.2d 226, 232 (6th Cir. 1992) (where the court assumed, without deciding, that an in-court identification was impermissibly suggestive, and went on to consider the second prong of the test); United States v. Rundell, 858 F.2d 425, 427 (8th Cir. 1988) (per curium) (same); but see United States v. Bush, 749 F.2d 1227, 1232 (7th Cir. 1984) (holding that when defendant's position at counsel table was the only suggestive circumstance, the court need not move to the second prong of the test). Moreover, when, as here, the defendant is of a different race than the witness, concern about suggestiveness is heightened. See Sheri Lynn Johnson, *Cross-Racial Identification Errors in Criminal Cases*, 69 Cornell L. Rev. 934 (1984). Thus we move on to the second prong of the test to consider the reliability of the identification.

The five factors to be considered in determining the likelihood of misidentification are: 1) the opportunity of the witness to observe the criminal at the time of the crime; 2) the witness's degree

4

of attention; 3) the accuracy of the witness's prior description; 4) the witness's level of certainty; and 5) the time between the crime and the identification. Neil v. Biggers, 409 U.S. 188, 199 (1972). These factors are to be weighed against the corrupting effect of the suggestive identification. Manson, 432 U.S. at 114; United States v. Watkins, 741 F.2d 692, 693-94 (5th Cir. 1984).

Here, the exact length of time the robber was in Regions Bank is not clear from the record, but Rodrigue indicated at trial that she had not observed him for very long. Moreover, Rodrigue was able to see only the lower part of the robber's face during the crime because he was wearing wraparound sunglasses and a baseball cap, though she did explain that her identification was based on Rogers' "very distinct" nose and "narrow chin." It is also relevant that although the prosecutor indicated that the robber had facial hair when Rodrigue saw him at the bank, Rogers did not have facial hair at the trial. In light of the short time for observation, and the extent to which the robber's face was obscured at the time of the crime, the witness's opportunity to view him must be regarded as relatively limited.

The witness's degree of attention must also be considered suspect given that she testified that her reaction to the robber was "stark fear, fear for my life." That such a response is entirely reasonable under the circumstances does not change the fact that it weighs against the reliability of her identification by throwing some doubt on her ability to concentrate on and remember his face.

There is no indication in the record of any pre-trial description of the robber by Rodrigue so the third factor weighs neither in favor of, nor against, reliability. Turning to the fourth factor, Rodrigue's level of certainty in the identification was extremely high. With respect to the fifth factor, the time between the crime and the identification was almost ten months--a length which does not by itself preclude the use of an identification, but which raises concerns about the accuracy of the memory.

Thus, the only factor that weighs in favor of the reliability of the identification is the witness' level of certainty. Her conviction cannot be enough to outweigh the factors that undercut its

5

reliability in light of the circumstances under which Rodrigue came to identify the defendant. Even the best intentioned among us cannot be sure that our recollection is not influenced by the fact that we are looking at a person we know the Government has charged with a crime. Due process precludes sending evidence of such questionable credibility to a jury. Accordingly, we find that this identification was impermissibly suggestive and posed a very substantial risk of irreparable misidentification and, therefore, should not have been admitted.      Having found that an error exists is not the end of our inquiry. Under the plain error standard, in order to be reversible an error must "affec[t] substantial rights." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks and citation omitted). In Olano the Supreme Court explained that determining whether an error affects substantial rights entails essentially the same sort of analysis as a harmless error inquiry, but with the burden of showing prejudice falling on the defendant rather than on the Government. Id. at 734. Thus we now consider whether Rogers has shown that the erroneous admission of the in-court identification prejudiced the outcome of this case.

The bulk of the evidence presented at trial could not be used in our preceding analysis of whether Rodrigue's identification of Rogers was reliable because admissibility rests on the reliability of the identification judged solely by the circumstances indicating whether it was likely to be a well-grounded identification, not whether it seems likely to have been correct in light of other available evidence. Manson, 432 U.S. at 118 (Stevens, J., concurring) (noting that though it is sometimes difficult to put other evidence of guilt to one side, the Court "carefully avoid[ed] this pitfall and correctly relie[d] only on appropriate indicia of the reliability of the identification itself."). In contrast, when considering whether the error was prejudicial we "look to the totality of circumstances including all of the evidence adduced," Watkins, 741 F.2d at 695; see also Archibald, 734 F.2d at 943 (finding error harmless although the identification challenged was impermissibly suggestive), and we find error harmless if it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 87 S.Ct. 824, 828 (1967). Having

6

reviewed the record in this case, we are convinced beyond a reasonable doubt that the jury would have rendered a guilty verdict in the absence of the impermissible in-court identification. In particular, we note that evidence adduced at trial showed that the tennis shoes, raincoat, and wraparound sunglasses described by Rodrigue and depicted in surveillance photographs taken at the second robbery were found in Rogers' home and car. More important, fingerprints taken from each of the two, similarly-worded, demand notes were identified as Rogers' fingerprints. The defense raised no plausible doubts as to the authenticity of the fingerprint identification. Additionally, the record indicated that Rogers attempted to escape after his arrest. The jury was properly instructed that it could draw inferences regarding his guilt from those facts. See United States v. Ballard, 423 F.2d 127 (1970). Although in-court identifications can be powerfully persuasive, Rodrigue's identification in this case was a last-minute addition to an otherwise overwhelmingly persuasive accumulation of evidence against the defendant. Accordingly, we find that, though ill-advised, the admission did not substantially affect the defendant's rights.

## II. Sufficiency of the Evidence

Rogers next contends that there was insufficient evidence to support his conviction on Count One, the robbery of Premier Bank. In reviewing a sufficiency of the evidence claim, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 320 2789 (1979); accord United States v. Resio-Trejo, 45 F.3d 907, 910-11 (5th Cir. 1995).

Rogers argues that the Government did not offer evidence that could prove beyond a reasonable doubt that he was the individual who robbed Premier Bank on August 8, 1995. In support of his claim, Rogers cites the D.C. Circuit's decision in Borum v. United States, 380 F.2d 595 (D.C.Cir. 1967), and our discussion of Borum in Gibson v. Collins, 947 F.2d 780 (5th Cir. 1991), where we accepted the Borum rule insofar as it says that when the only evidence against a defendant is fingerprints from the scene of the crime, a reasonable juror may find guilt beyond a reasonable

doubt only if the evidence indicates that the imprinted object was generally inaccessible to the defendant except during the commission of the crime. Gibson, 947 F.2d at 785. Borum does not control here, however, because the fingerprint on the demand note was not the only evidence adduced at trial regarding the identity of the man who robbed Premier Bank. The similarity of the demand notes used in the two robberies supports a theory that they were perpetrated by the same person.[2] Additionally, the jury was allowed to consider, with respect to guilt on each of the two counts, the evidence that Rogers had fled police custody after his arrest. Reviewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Rogers was guilty on Count One.

To the extent that defendant's brief raises as a separate issue a challenge to the jury instructions on the first count, we review the instructions for plain error because no objection was made in the district court. United States v. Reyes, 102 F.3d 1361, 1364 (5th Cir. 1996). Rogers suggests that the instructions did not clarify the Government's burden of proof with respect to the identity element of Count One. While more extensive instructions were given regarding the issue of identity with respect to Count Two, the instructions spelled out the elements of the crime charged in each count and directed that the jury consider each count separately. We therefore find no plain error in the instructions.

**III. Sentencing**

Rogers appeals his sentence, arguing that it was increased on the basis of an erroneous determination that he was a career offender under U.S.S.G § 4B1.1. Rogers contends, and the Government concedes, that the district court relied on a prior conviction for attempted distribution of cocaine to increase Rogers's sentence in this case, and that attempt offenses could not support career offender status at the time of the robberies for which Rogers was convicted. See United States v. Bellazerius, 24 F.3d 698 (5th Cir. 1994). As is well known, the ex post facto clause of the

---

[2] Rogers asserts that the demand notes were more different than similar, but that determination was for the jury.

Constitution prohibits the retroactive application of a penal law if it causes a disadvantage to the defendant. See U.S. Const. art. 1, § 9, cl.3; United States v. Suarez, 911 F.2d 1016, 1021 (5th Cir. 1990). The Government does not dispute that Rogers should have been sentenced under the guidelines as they stood at the time of his offense, when his previous attempt crime would not have not qualified him as a career offender. Nonetheless, the Government contends that the sentence given should be upheld, asserting that the error was harmless.

The Government argues that the error in sentencing was harmless because, had the district court not found Rogers to be a career offender, it would have departed upward to the same sentencing range. The Sentencing Reform Act of 1984 allows a district court to depart from a guideline range under certain circumstances. 18 U.S.C. § 3553(b). However, the court had denied the Government's motion for upward departure, which had argued that Rogers's criminal history category did not adequately reflect the seriousness of his past conduct. In denying the motion, the court said: "I decline to upwardly depart from the guidelines range, but I do not hold that there is no foundation for the Government's motion. If this guidelines range were less than it is, I would certainly grant the Government's motion, and there would be an upward departure." Later, when the court sentenced Rogers, the court said that his "criminal history, these offenses, and the other information contained in the presentence report, and the firm and fixed opinion of this court at this time mandates that [Rogers] be sentenced at the maximum range of the guidelines." The Government argues that given these statements of the district court, it can be inferred that, in the absence of the error which led to Rogers's being sentenced as a career offender, the court would have granted the upward departure and given Rogers the same sentence.

The misapplication of a guideline is harmless error if the district court would have imposed the same sentence even in the absence of the error. Williams v. United States, 503 U.S. 193, 203 (1992); United States v. Tello, 9 F.3d 1119, 1129-31 (5th Cir. 1993). The Supreme Court has said that once it is shown that a district court relied on an invalid factor in sentencing, the burden is on the party favoring the sentence to show that it would have been the same absent the error. Williams, 503

9

U.S. at 203-05. The question is not whether the district court *could* have chosen the same sentence, but whether it *would* have chosen that sentence. Tello, 9 F.3d at 1131 (holding that application of the wrong sentencing range is not harmless error even where the same sentence was available under the correct sentencing range). While the district court's statement does indicate an inclination to grant an upward departure in the absence of a career offender enhancement, there is no way to know that an upward departure would have resulted in the same 262-month sentence that Rogers received. Moreover, when a district court departs from the range prescribed by the guidelines, it must consider upward departures incrementally and must state specific reasons for the imposition of the higher sentence chosen. 18 U.S.C. § 3553(c); United States v. Lambert, 984 F.2d 658, 662-63 (5th Cir. 1993) (en banc). Without the erroneous career offender enhancement, Rogers's adjusted offense level is 28, his criminal history category is VI, and his resulting guideline range is 140-175 months. To reach a 262-month sentence, the district court would have had to consider and reject three intermediate offense levels and then decide that an offense level of 32 was appropriate--steps the court did not take.[3] Thus, although we agree with the Government that whether, and how much, to upwardly depart are within the district court's discretion, we cannot affirm here because the district court has not yet exercised that discretion.

For the foregoing reasons, we affirm the conviction and vacate the sentence, remanding for further proceedings consistent with this opinion. In re-sentencing Rogers, the district court may, of course, reconsider the motion for upward departure.

---

[3] We do not today consider whether such a departure would have been reasonable.

10