# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20010

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ANTHONY MICHAEL SHAFFER,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-181-1

Before PRADO, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Anthony Shaffer appeals his criminal conviction on the ground that his Fifth Amendment right to due process was violated when the trial court admitted in-court witness identifications that were influenced by impermissibly suggestive pretrial procedures. The Government concedes that the admission of the in-court identifications was constitutional error but argues that the conviction should be affirmed because the error was

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20010

harmless. Because we are not convinced that the error was harmless beyond a reasonable doubt, we reverse.

## I. FACTUAL BACKGROUND

On December 11, 2013, surveillance cameras recorded a man, armed with a gun, rob the Wal-Mart branch of Woodforest National Bank in Pearland, Texas. The relevant footage shows a man approach the bank teller's desk and receive a withdrawal slip from the teller. The man briefly writes on the slip and then pulls a gun from his waistband. According to the teller, he then demanded the "loose hundreds." After she gave him the money in her teller drawer, the man walked to the adjacent teller and robbed her at gunpoint.

The Wal-Mart's external cameras captured the car used by the robber. Based on the license plate of this vehicle, the Pearland Police Department focused their investigation on Trevian Robinson. Police searched Robinson's home where they found a sweater, sweatpants, and a gun that appeared similar to those in the surveillance video. Robinson conceded that the clothes and gun belonged to him but told the police that he had been with his cousin, Anthony Shaffer, the afternoon of the robbery and that Shaffer had asked for a ride to the Wal-Mart where the robbery took place. After looking at still photographs from the surveillance footage, Robinson said that the man who robbed the bank looked like Shaffer.

At the scene of the crime, police recovered the withdrawal slip upon which the robber wrote a demand note. From this slip, police were able to recover latent fingertip prints. Shaffer was fingerprinted and two law enforcement officers testified at trial that a fingerprint on the withdrawal slip matched Shaffer's fingertip print.

The day after the robbery, the two bank tellers who had been present when the robbery occurred, A.L. and C.M., were shown a photographic array that included Shaffer's driver's license photograph. Neither identified Shaffer.

At trial, however, both A.L. and C.M. positively identified Shaffer as the robber. On cross-examination, both A.L. and C.M. testified that prior to trial, the prosecutors had shown them still photographs from the surveillance video, told them Shaffer's name, and said that he had been charged with the crime. C.M. also testified that prior to the trial, she had been brought to the courtroom while Shaffer was present and asked if she recognized anyone. After each admission, Shaffer's attorney objected on the ground that the in-court identification should be barred because it was influenced by impermissibly suggestive pretrial identification procedures and moved for a mistrial. The court overruled the objections and denied the motions for a mistrial.

Robinson testified at trial that Shaffer had asked for a ride to the Pearland Wal-Mart on the day the robbery occurred but that Shaffer did not say why he wanted to go. Robinson stated that he drove Shaffer to the Wal-Mart and stayed in the car while Shaffer went inside. Prosecutors showed Robinson the surveillance video, and Robinson identified the clothes the robber was wearing as belonging to him, as well as admitted his gun had been used in the robbery. He also said that the man in the video was Shaffer. Shaffer's counsel argued in his closing that Robinson was the bank robber.

In its closing arguments, while the Government acknowledged that Robinson may have played a role in the crime, suggesting he may have been the getaway driver, it asserted that the evidence convincingly established that Shaffer was the one who robbed the bank. The Government repeatedly emphasized the fact that both of the bank tellers had positively identified Shaffer as the robber. Specifically, the Government told the jury that: "[W]hat really convicts him and should convince you is that both [A.L.] and [C.M.] both positively identified him for you here in this courtroom."

At the conclusion of the trial, the jury found Shaffer guilty on both counts charged in the superseding indictment: bank robbery in violation of 18 U.S.C.

No. 15-20010

§ 2113(a) and (b) and brandishing a firearm in the commission of a crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Shaffer was sentenced to a total of 162 months imprisonment and ordered to pay restitution.

## II. STANDARD OF REVIEW

Because the Government concedes that the admission of A.L. and C.M.'s in-court identifications was constitutional error, *see, e.g.*, *United States v. Cueto*, 611 F.2d 1056, 1064–65 (5th Cir. 1980), we need only address whether this error was harmless beyond a reasonable doubt, *see United States v. Wright*, 777 F.3d 769, 777 (5th Cir.), *cert. denied*, 135 S. Ct. 2821 (2015). A constitutional error is harmless if "there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008) (alteration in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "The government bears the burden of establishing the error is harmless beyond a reasonable doubt." *United States v. Jackson*, 636 F.3d 687, 697 (5th Cir. 2011) (quoting *Alvarado-Valdez*, 521 F.3d at 341).

"In determining whether an error is harmless we look to the totality of circumstances including all of the evidence adduced." *United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984). "A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Id.* (quoting *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir. 1980) (en banc)). "[T]his is an exacting standard that must be uncompromisingly applied." *Harryman*, 616 F.2d at 876.

## III. DISCUSSION

While the Government acknowledges that the admission of A.L. and C.M.'s in-court identifications was unconstitutional, we are compelled to note the significant role this evidence had at trial. The central dispute was the

No. 15-20010

identity of the robber. A.L. and C.M. were the only two eyewitnesses to the crime that testified, and they both stated that Shaffer was the robber. "[E]yewitness identification evidence has a powerful impact on juries." *Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (Brennan, J., dissenting); *see also United States v. Rogers*, 126 F.3d 655, 660 (5th Cir. 1997) (noting that "in-court identifications can be powerfully persuasive"). Notably, the Government focused on this evidence in its closing argument, stating that "what really convicts him and should convince you is that both [A.L.] and [C.M.] both positively identified [Shaffer] for you here in this courtroom." As the Government emphasized, while A.L.'s testimony "by itself would be enough to convict [Shaffer,] . . . [w]e went further than that" as C.M. "also identified him." Because the Government repeatedly stated that the in-court identifications were conclusive proof that Shaffer was the robber, "[t]here is no way to determine whether the jury would have convicted [the defendant] purely on the basis of [the tainted] testimony or of any of the other evidence." *Jackson*, 636 F.3d at 697 (alterations in original) (quoting *Alvarado-Valdez*, 521 F.3d at 343). Accordingly, "[w]e cannot see how the government can conclusively show that the tainted evidence did not contribute to the conviction, because the government's closing argument relied on that very evidence." *Alvarado-Valdez*, 521 F.3d at 342–43.

Nevertheless, the Government now contends that even when A.L. and C.M.'s in-court identifications are removed from consideration, the evidence presented at trial was so overwhelming as to establish Shaffer's guilt beyond a reasonable doubt. In support, the Government principally focuses on the following evidence: (1) Robinson's testimony; (2) the surveillance video; and (3) the fingerprint found on the withdrawal slip.

At trial, Robinson testified that he drove Shaffer to the Wal-Mart on the day of the robbery and that the sweater, sweatpants, and gun worn and used

by the man in the surveillance video belonged to him. Robinson also identified the man in the surveillance video as Shaffer.

There is reason, however, to question portions of this testimony—especially the identity of the robber. As Shaffer's counsel argued at trial, the robber arrived in Robinson's car, was wearing Robinson's clothes, and was carrying Robinson's gun. While Robinson told both the police and the jury that it was Shaffer and not him in the surveillance video, he plainly had an incentive to do so. Taking Robinson's testimony on its face would force us to accept the credibility of a paramount witness that we were unable to observe and whom the Government conceded may have participated in the crime. Given the outstanding questions about Robinson's credibility, we cannot say that his testimony is overwhelming evidence that Shaffer was the robber. *See Cueto*, 611 F.2d at 1065 (noting credibility issues of witness in conducting harmless error review).

We also cannot accept the Government's contention that the surveillance video provides overwhelming evidence that Shaffer is guilty. The video, although it includes the robber's face, is of a grainy quality. The person in the video is also wearing a cap that casts a shadow over his face and obscures his facial features. Thus, we cannot determine with any certainty the surveillance video's probative force.

Lastly, the Government's fingerprint evidence does not persuade us that the tainted in-court identifications were harmless beyond a reasonable doubt. Specifically, the Government points to the fact that the surveillance video shows the robber touching the demand note and that two fingerprint analysts testified at trial that a single fingertip print found on the demand note matched a single fingertip print from Shaffer. Yet the fingertip print—unlike the robber's gun, clothes, or getaway car—is the only physical evidence that does not also implicate Robinson. While fingerprint evidence by itself may be

sufficient to support a jury's guilty verdict, *see Gibson v. Collins*, 947 F.2d 780, 785 (5th Cir. 1991), where there is constitutional error, a guilty verdict may be affirmed only where "there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *Alvarado-Valdez*, 521 F.3d at 341 (alteration in original) (quoting *Chapman*, 386 U.S. at 24). Because of the heavy emphasis that the Government placed on the tainted in-court identifications and our doubts surrounding the strength of the Government's other evidence, the single fingertip-print match does not persuade us beyond a reasonable doubt that the introduction of the tainted identification testimony was harmless error.

## IV. CONCLUSION

For the foregoing reasons, we reverse Shaffer's conviction and remand to the district court.

No. 15-20010

PRISCILLA R. OWEN, Circuit Judge, dissenting:

I respectfully dissent. The prosecutor's constitutional error in tainting the in-court identifications made by the two bank tellers was harmless beyond a reasonable doubt.[1] The fingerprint evidence establishes Shaffer's guilt.[2] The majority opinion improperly discounts that evidence as well as the probative strength of the minutes-long videotape of the robber committing the robbery. The video is much clearer than the majority opinion implies, and the jury had the opportunity to look at the video and then Shaffer and Robinson in person at trial to determine which of them was caught in the act. The evidence overwhelmingly establishes Shaffer's guilt. I would therefore affirm the conviction, in spite of the Government's extremely improper and unprofessional conduct.

Shaffer's theory at trial was that Robinson, not Shaffer, robbed the bank.[3] But it was Shaffer's fingerprints, not Robinson's, that were on the deposit slip on which the robber penned a demand note before handing it to the bank teller. Importantly, there is no possibility that Shaffer could have touched the deposit slip before the robbery or outside of the bank because the teller gave the deposit slip to the robber.[4] The surveillance video tape reflects that the deposit slip was handed to the robber by a bank teller after the robber entered the bank and approached the counter. The robber then writes on the slip (pressing down with his fingertips to hold the paper in place for more than

---

[1] *See, e.g., Harrington v. California*, 395 U.S. 250, 253-54 (1969); *Harryman v. Estelle*, 616 F.2d 870, 875-88 (5th Cir. 1980) (en banc).

[2] *See United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984).

[3] *Ante* at 6.

[4] *Cf. Wright v. Florida*, 474 U.S. 1094, 1096 (1986) (Blackmun, J., dissenting from denial of certiorari) (explaining that because "Wright's fingerprint could have been left during [an] alleged earlier break-in, this case comes down to Wright's word against Westberry's").

one minute).  After demanding and receiving money, the robber departed the area leaving the deposit slip/demand note behind.  This is all memorialized on the video tape, very clearly.  Because it is indisputable that the piece of paper was handed to the robber immediately before the robbery and then was left at the scene, there is no reasonable explanation as to how Shaffer's fingerprint appeared on the slip other than to conclude that he was the robber.[5]

As the majority opinion recounts, detectives were able to recover a latent fingertip print from the bank deposit slip used as the demand note.[6]  Marcy Farley, a latent fingerprint examiner from the Brazoria County Sheriff's Department, analyzed the print found on the deposit slip and confirmed that it matched Shaffer's.  Farley also personally took Shaffer's fingertip prints and identified Shaffer at trial as the man she fingerprinted.  The print's match was confirmed by two other fingerprint experts in the Brazoria County Sheriff's Department, one of whom testified at trial.  None of this evidence was impeached in any material way.  There is no contention, or even suggestion, that the print belonged to Robinson.  This is unrefuted physical evidence that identifies Shaffer as the robber beyond any reasonable doubt.

The video is also compelling evidence.  The majority opinion overstates the case in describing its quality as "grainy."[7]  The video was taken from inside the bank directly in front of the teller counter occupied by A.L. at the time of the robbery.  The video shows that a man walks up to the counter, receives a deposit slip that is handed to him, and begins to write on it.  After securing the slip with his fingertips and writing on the slip for over ninety seconds, the man

---

[5] *See United States v. Folks*, 236 F.3d 384, 390 (7th Cir. 2001) (holding error harmless with fingerprints as primary evidence against defendant); *United States v. Wade*, 740 F.2d 625, 628 (8th Cir. 1984) (same).

[6] *Ante* at 6.

[7] *Ante* at 6.

displays a gun, then waits another thirty seconds until the teller hands him money. All told, the man is in the video's frame, seen from the waist up, for more than three minutes. He appears to be standing no more than an arm's length away from the camera for almost the entire duration.

The majority concludes that the video has little probative value for purposes of our harmless error analysis based on the opinion's assessment that the video was of "grainy quality" and that shadows from the robber's hat "obscure[ ] his facial features."[8] The video in fact provides a reasonably clear image of the robber's face at times. Shadows cast from the perpetrator's hat do obscure his features at some points during the video, but his unmasked face can be seen with clarity during other portions as he shifts his body positioning and turns his head. There were still shots of the robber's face taken from the video.

The jury was shown this video during trial. The jury also had multiple opportunities to view Robinson and to compare him to the man in the video: Robinson testified at trial for the Government and also appeared in the court room during the testimony of both A.L. and C.M., another teller present during the robbery, during which both witnesses were asked whether Robinson was the man that robbed the bank. Both testified that he was not. Although these negative identifications are likely tainted by the same suggestive pretrial procedures that tainted the positive identifications of Shaffer, Robinson's appearance in the court room during each of these witnesses' testimony offered the jury extended opportunities to look at Robinson and compare him to the robber shown in the video. One of Robinson's appearances in the courtroom occurred only four minutes after the jury viewed the video. The jury also

---

[8] *Ante* at 6.

requested an opportunity to view the video from "up close" during their deliberations, giving the members of the jury another opportunity to compare the robber's identity to both Shaffer and Robinson. This second viewing appears to have featured prominently in the jury's deliberations—it returned a guilty verdict only 20 minutes after viewing the video.

More confounding is the majority opinion's conclusion that the fingerprint evidence does not overwhelmingly establish Shaffer's guilt. With essentially no analysis, it holds that the fingerprint recovered from the demand note written by the robber "does not persuade" as to the harmlessness of the district court's error.[9] The majority opinion fails to explain how Shaffer's fingerprint on the demand note could allow any reasonable doubt that Shaffer was responsible for the robbery.

Finally, although Shaffer is correct that the Government emphasized the identifications made by A.L. and C.M. several times during its opening and closing statements, it is important to note that Shaffer's counsel forcefully cross-examined those witnesses about their previous failures to identify Shaffer and elicited testimony about the suggestiveness of the procedures that led to their identifications. Defense counsel also elicited testimony from Detective Jernigan, one of the Government's primary witnesses, that eyewitness identifications are not always reliable. Armed with this testimony, Defense counsel argued to the jurors during his closing argument that they should doubt the positive identifications. In any event, the fingerprint evidence coupled with the surveillance video overwhelmingly establishes Shaffer's guilt.

---

[9] *Ante* at 7.

No. 15-20010

The majority opinion reasons that because "'in-court identifications can be powerfully persuasive'"[10] and the Government relied on the identifications in its closing argument,[11] there is a reasonable possibility that the tainted identifications "might have contributed to the conviction."[12]   The majority opinion's application of the harmless error rule formulated in *Chapman v. California*[13] is in tension with decisions of the Supreme Court and of our en banc court.

In *Harrington v. California*,[14] in which the Supreme Court directly reviewed a state court conviction, four defendants were tried together and the confessions of two of them, who did not testify at trial, were admitted into evidence with the limiting instruction that the jury was to consider each confession only against the confessor.[15]   Citing *Bruton v. United States*,[16] the Supreme Court held that this violated Harrington's rights under the Confrontation Clause of the Sixth Amendment because Harrington did not have the opportunity to cross-examine these two non-testifying defendants. The Supreme Court held that the error was harmless, however, explaining that "[i]t is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of [the two co-defendants'] confessions

---

[10] *Ante* at 5 (quoting *United States v. Rogers*, 126 F.3d 655, 660 (5th Cir. 1997)).

[11] *Ante* at 5.

[12] *Ante* at 7 (quoting *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008)).

[13] 386 U.S. 18, 19, 24 (1967) (holding, in a case in which under state law, the prosecutor was permitted to comment and did comment on the defendants' failure to testify or to deny or explain incriminating evidence, "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

[14] 395 U.S. 250 (1969).

[15] *Id*. at 252.

[16] 391 U.S. 123 (1968).

and who otherwise would have remained in doubt and unconvinced."[17]   The Court rejected this argument, stating "[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury."[18]   The Court concluded, "[t]he case against Harrington was not woven from circumstantial evidence.  It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed."[19]

The same can be said of the evidence against Shaffer in the present case. The fingerprint and videotape evidence was not circumstantial.   It was substantial physical evidence and convincing beyond a reasonable doubt.

The majority opinion is inconsistent with *Harryman v. Estelle*, in which our court, sitting en banc, applied the harmless error rule in a habeas proceeding.[20]  Harryman was arrested, and in searching his person, one of the officers found a condom containing a white powdered substance.[21]   Before reciting the *Miranda*[22] warning, the office asked Harryman "[w]hat is this" and Harryman responded "[o]h, you know what it is.  It is heroin."[23]   At trial, the arresting officers testified about this statement,[24] and one of the prosecutors referred to it three times in closing argument to the jury.[25]   Harryman was convicted in state court of possession of heroin and sentenced to life in prison.

---

[17] *Harrington*, 395 U.S. at 254.

[18] *Id.*

[19] *Id.*

[20] 616 F.2d 870, 875-78 (5th Cir. 1980) (en banc).

[21] *Id.* at 873.

[22] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[23] *Harryman*, 616 F.2d at 873.

[24] *Id.*

[25] *Id.* at 877.

No. 15-20010

In habeas proceedings, after concluding that *Miranda* had been violated and that there was constitutional error,[26] our court addressed the harmless error standard.  We said, "'it is necessary to review the facts of the case and the evidence adduced at trial' to determine the effect of the unlawfully admitted evidence 'upon the other evidence adduced at trial and upon the conduct of the defense.'"[27]  "A court must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt."[28]  Harryman maintained that the condom in his possession contained only milk sugar, that the police failed to maintain a chain of custody of the condom and confused it with another condom also in police custody that contained heroin.[29]  It was undisputed that the police had custody of two condoms, one containing milk sugar and the other containing heroin.[30]  However, our court concluded that the testimony regarding the chain of custody established that the condom containing heroin was the one found on Harrington's person at the time he was arrested and therefore, that the *Miranda* violation was harmless beyond a reasonable doubt.[31]

In the present case, the evidence that the robber was Shaffer and not Robinson was physical evidence—a fingerprint and a lengthy video showing the robber's face.  The in-court identifications were harmless beyond a reasonable doubt.

*       *       *

---

[26] *Id.* at 875.

[27] *Id.* at 876 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 87 (1963)).

[28] *Id.*

[29] *Id.* at 877-78.

[30] *Id.*

[31] *Id.* at 878.

14

No. 15-20010

I would affirm Shaffer's conviction.  I therefore respectfully dissent.